UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL EMMETT WOLFE #275844,

    Plaintiff,

v.

                                    Case No.   2:16-cv-231
                                    HON.   GORDON J. QUIST

UNKNOWN LALONDE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Michael Wolfe pursuant to 42 U.S.C. § 1983. Plaintiff is currently confined in the Michigan Reformatory. Plaintiff alleges that Defendants RUM LaLonde, Deputy Warden Isard, Warden Jeffrey Woods, and Captain Miller failed to protect him from an inmate assault while he was confined at the Chippewa Correctional Facility (URF). Plaintiff alleges that Defendants acted with deliberate indifference by ignoring his request for protection. Plaintiff states that he informed Defendants that he had previously been assaulted in April of 2014, and that he believed that he would be assaulted again after he was transferred to URF. Plaintiff was placed in segregation after he was found guilty of assault in January of 2016. Plaintiff was released from segregation in March of 2016. Plaintiff alleges that he was assaulted on May 9, 2016. Defendants filed a motion for summary judgment. (ECF No. 39). Plaintiff filed a response. (ECF No. 42).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468

(6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of

proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 James William Moore, et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). "But when prison officials decline to enforce their own procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent federal lawsuit." *Hardy v. Agee*, No. 16-2005, at 3 (6th Cir. Mar. 5, 2018) (unpublished) citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by

> intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-591 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response

---

1 In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendant Woods asserts in a motion for summary judgment that Plaintiff failed to exhaust his administrative remedies against him. The Court has already addressed this argument. (ECF No. 36). Plaintiff filed grievance URF-16-05-1935-03b at Step I dated May 10, 2016. (ECF N0. 40-2, PageID.203). Plaintiff alleges that he kited the Warden's Office, and informed "RUM LaLunda, Miller, and the Dept. Warden" about his request for protection. The Step I response indicated that Plaintiff "was seen by SCC for protection and alternative level II placement was recommended." (PageID.204). Arguably, Plaintiff named each Defendant in his Step I grievance. The Court has already addressed this issue and rejected Defendants' arguments by stating "Miller and Wood's motion for summary judgment on the ground of Wolfe's failure to exhaust his claims under grievance URF-16-05-1935-03b will be denied." (ECF No. 36, PageID.175). In the opinion of the undersigned, there exists no reason to revisit this issue.

Defendants move for qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006)); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the two-part test is no longer considered mandatory; thereby freeing district courts from rigidly, and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .   But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837.   Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind.   *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect."   *Id.* at 165.   *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988).   An error of judgment does not subject a prison official to liability.   *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him.   In that case, prison officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety.   Plaintiff was then transferred back to his original cell.   Plaintiff informed his counselor that he feared for his safety, because he heard rumors regarding a planned attack.   Plaintiff was subsequently assaulted.   The court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff and upheld the

district court's finding that the assault was a single, isolated incident. The district court judge indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. Plaintiff, however, was transferred to another unit after his initial complaints. Following plaintiff's transfer back to the original unit, he then made only general allegations that someone was going to hit him on the head. The court concluded that defendants, at most, were guilty of mere negligence and dismissed the claim.

Defendant Isard submitted an affidavit stating that Plaintiff had a review before the Security Classification Committee on January 28, 2016. (ECF No. 40-3, PageID.206-207). Defendants Miller and Woods were not members of the SCC and were not directly involved in addressing Plaintiff's requests for protection. Defendants Isard and LaLonde acted as members of the SSC and addressed a misconduct charge against Plaintiff for assault on January 28, 2016. Plaintiff was placed in administrative segregation because he was found guilty of assault and battery of another prisoner. (ECF No. 29, PageID.125). Defendants have failed to explain how Plaintiff's placement in administrative segregation in January addressed his claim that his requests for protection were denied after he was released from segregation in March.

> Plaintiff explained in his deposition:
>
> I believe that in my heart that you understand, you might not know because you're not in here with me, but you understand that I'm a prisoner and I don't want to snitch on these individuals so I'm not going to go and say, oh, this such and such person and this such and such person 'cause I've been stabbed before and they are going to stab me again if I start giving names.
>
> So when I went to SCC they asked me to give them names and I said, look, sir, I can't do that because I'm living in prison. I said, I just want to be away from the situation.
>
> And he was like, what do you want us to do? And I asked him to ride me out or something or, you know, put me in a different facility

> or whatever, and they failed to do that, you know what I'm saying, they put me right back out in general population.
>
> And no matter how many months down the line it happened, I went to the hole in January -- the fight happened in January, I remember now, and the assault happened in March - or in April. So no matter how far that time frame is [] he waited that long and waited for things to die out.
>
> He knew just what I knew, that I brought it to their attention, you know. And they called me snitches and rats and wrote me kites under the door, sent me words through other people, through third parties saying if you don't get off the yard we going to get you off the yard.
>
> And I didn't want to look like -- you know, and put these in emphasis, I didn't want to look like a ho or a bitch or nothing, I just wanted to be Michael Wolfe and I wanted to be able to stick up for what I believed in and I didn't want to be known as no rat, no snitch, or none of that.
>
> And, you know, when I was out on the big yard I was lifting weights and he stabbed me multiple times, the most scariest moment of my life.

(ECF No. 40-4, PageID.210-211).

Defendants have failed to fully explain the actions that they each took after Plaintiff notified them of his request for protection. Plaintiff asserts that he asked for protection in March of 2016. Plaintiff was called a liar and told to "man up." Plaintiff alleges in his complaint that he was punched in the eye and jumped in May of 2016. Defendants rely solely on a portion of Plaintiff's deposition testimony which, when taken in the light most favorable to Plaintiff, explains that he requested protection based upon numerous threats by prisoners, and that each Defendant refused to provide him with protection. Plaintiff alleges that, as a result, he was stabbed several times and almost died. Plaintiff's response brief asserts that he was stabbed several times and jumped by several inmates after each Defendant refused to provide him with any assistance. Defendants have not explained what actions each of them took when Plaintiff requested protection

after his release from administrative segregation.   Defendant Isard simply attached an affidavit stating that Defendants Miller and Woods not members of the SCC when Plaintiff was classified to administrative segregation in January of 2016.   Defendant Isard has not explained what the SCC classification in January of 2016 has to do with Plaintiff's allegations that he was denied protection after being released from administrative segregation.   In the opinion of the undersigned, Defendants have failed to fully develop the factual record in this case and have failed to specifically address Plaintiff's claims.   At the very least, an issue of fact exists regarding whether Defendants failed to protect Plaintiff from harm because nothing in the record supports Defendants' argument that they are entitled to qualified immunity.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 39) be denied.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:    January 17, 2019